**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

**UNITED STATES OF AMERICA,**

                   Hon. Hugh B. Scott

                   08CR109A

        v.             Report
                   &amp;
                   Recommendation

**David Goss,**
      **Defendant.**

Before the Court is the defendant's omnibus motion seeking various relief including the suppression of evidence and statements (Docket No. 13).[1]

**Discussion**

On April 23, 2008, defendant David Goss was charged in an indictment with being an unlawful user of a controlled substance who knowingly possessed a firearm in violation of 18 U.S.C. §922(g)(3) and 924(a)(2) (Count I).[2] By way of the instant motion, Goss seeks Rule 16 Discovery, disclosure under Rules 404(b), 608 and 609 of the Federal Rules of Criminal

---

[1] The defendant's various requests for discovery are discussed in a separate Decision & Order.

[2] The Indictment also includes a second count asserting forfeiture of the firearms and ammunition upon which Count I of the indictment is based pursuant to 18 U.S.C. §§ 924(d), 3665 and 28 U.S.C. §2461(c).

1

Procedure, disclosure of inculpatory and impeachment material, a bill of particulars, disclosure of witness statements, the preservation of notes, and the suppression of evidence.

A suppression hearing was conducted on October 14, 2008, December 1, 2008, December 11, 2008, December 22, 2008, and February 6, 2009. Christopher Wisniewski ("Wisniewski"), a Special Agent with the Drug Enforcement Agency ("DEA") testified that in April of 2008 he was participating in an investigation of alleged drug trafficking involving Montu Lighten ("Lighten") and Amanda Goss (Lighten's girlfriend). (Docket No. 19 at page 3-4). Lighten and Amanda Goss resided at 19½ Park Street in the City of Tonawanda, New York. Wisniewski, and other agents including DEA Special Agent Joseph Bongiovanni ("Bongiovanni"), had conducted surveillance of the two at that address. (Docket No. 19 at page 4; Docket No. 25 at page 9-10). On April 8, 2009, Lighten and Amanda Goss were arrested at a restaurant in Tonawanda not far from the Park Street residence and charged with various drug trafficking crimes. (Docket No. 19 at page 4).

Lighten and Amanda Goss were transported to DEA offices in Buffalo. Amanda Goss was advised of her rights (Docket No. 25 at page 11) and subsequently questioned by Bongiovanni (Docket No. 25 at page 13-14). Bongiovanni testified that he asked her for consent to search her residence at 19½ Park Street. According to Bongiovanni, the residence appeared to be a single family home (Docket No. 25 at page 10). It is undisputed that Amanda Goss signed a consent form authorizing the law enforcement agents to search 19½ Park Street. (Docket No. 25 at page 15-16; see also Exhibit 1A). Bongiovanni testified that he went over the form with Amanda Goss; that he wrote in the address and noted on the form that she was providing consent for the "entire house" to be searched. (Docket No. 25 at page 18-19). Bongiovanni testified that

2

while he was questioning Amanda Goss, other agents were preparing to obtain a warrant to search 19½ Park Street. (Docket No. 25 at pages 20, 36). After Amanda Goss provided consent for the search of the premises, Bongiovanni contacted the other agents, including Wisniewski, and advised that consent to search the premises had been provided, and thus, no warrant was obtained. (Docket No. 25 at pages 20, 37-38). According to Bongiovanni, Amanda Goss told him that she lived at 19½ Park Street with Lighten and her child. He testified that she did not mention that her brother lived with her. (Docket No. 25 at 39-40).

After the arrest of Lighten and Amanda Goss at the restaurant, Wisniewski made several stops and was proceeding back to 19½ Park Street in anticipation that a search warrant was to be obtained when he received word that Amanda Goss had consented to a search of the premises. (Docket No. 19 at page 5). When he arrived at 19½ Park Street, he observed several people coming out of the residence with various furniture and appliances. He stated that "it looked like the place was being cleaned out." (Docket No. 19 at page 6). Wisniewski testified that he observed David Goss and another individual in the driveway of the house carrying gun cases. (Docket No. 19 at page 7, 10). Wisniewski called Agent Robert Wilson of the Alcohol, Tobacco and Firearm Agency ("ATF") to come to the scene. (Docket No. 19 at page 8). Wisniewski stated that he and another officer detained everyone at the scene incident to the search and asked the individuals for identification. Once Wilson arrived, David Goss was advised of his rights. (Docket No. 19 at page 9).[3] At that time, Wisniewski and Wilson spoke with David Goss, who allegedly stated that three of the four firearms encountered at the scene belonged to him and that

---

[3] Wilson testified that he read David Goss his rights from a card he keeps with him. Wilson read the contents of the card into the record at the suppression hearing. (Docket No. 19 at page 45-46).

3

he purchased them legally and could produce paperwork for the weapons. (Docket No. 19 at page 8-9). Wisniewski testified that in that same conversation, David Goss told him that he smoked marijuana on a daily basis, had smoked marijuana that very day, and that he had done so for approximately nine years. (Docket No. 19 at page 33, 46-47). David Goss accompanied Wisniewski and Wilson back into the house to obtain the documentation relating to the rifles. (Docket No. 19 at page 27).[4] There, the officers observed "bongs and smoking pipes and ammunition laying in plain view." (Docket No. 19 at page 27). According to Wisniewski, after David Goss told the officers that the upstairs level in the residence was the area he used to occupy, the officers asked David Goss "for permission to look around and he granted it." (Docket No. 19 at page 27, 61). David Goss subsequently signed a statement acknowledging his gun ownership and use of marijuana. (Docket No. 19 at page 48-49, Exhibit No. 4).

**Motion to Suppress**

The defendant asserts that the search of the upstairs level of 19½ Park Street constituted an illegal warrantless search. David Goss argues that Amanda Goss did not have apparent authority to consent to the search of the upper level of the house which he characterizes as a separate residence from the lower unit. According to Paul Kirchmeyer, the owner of 19½ Park

---

[4] Wisniewski testified that shortly after arriving at the scene, he made an initial entry into the residence to make sure there were no threats in the house. (Docket No. 19 at page 27-28). Wilson also testified that, upon arriving at the scene, he had entered the house prior to having any conversation with David Goss. Wilson testified that he asked David Goss whether he used marijuana because he saw marijuana pipes and smelled marijuana when he went thought the apartment on the initial occasion. After the conversation in which David Goss allegedly admitted ownership of the weapons and marijuana use, Wilson and Wisniewski accompanied David Goss back into the premises to find the documentation relating to the weapons. (Docket No. 19 at page 44-46).

Street, the building is a single residence. The upper level does not have a bathroom or kitchen, but consists of a bedroom and walk-in closet. (Docket No. 23 at pages 6, 11, 22, 26-27). The entire residence was rented to David Goss and Kirchmeyer collected the rent from David Goss. At some point in time, Amanda Goss moved into the residence and David Goss placed a dead-bolt lock on the door leading to the upstairs bedroom. (Docket No. 23 at pages 23-24). The rent did not change and Kirchmeyer continued to collect the rent from David Goss. (Docket No. 23 at page 24). Kirchmeyer did not appear to be aware of any arrangement between David Goss and Amanda Goss as to how the rent was divided between them. (Docket No. 23 at page 24). Kirchmeyer testified that it was never his intent to separate the upstairs and downstairs into separate residences. (Docket No. 23 at page 29). Kirchmeyer stated that if the door to the upstairs was open, it would appear to be part of a single residence, which it was. (Docket No. 23 at page 28, 29). Kirchmeyer also stated although there was damage to various parts of the house which he believed was done by the law enforcement agents during the search, there was no damage to the door leading to the upstairs bedroom or to the deadbolt placed on that door by David Goss. (Docket No. 23 at page 30-31). Thus, the physical evidence does not suggest that the agents searching the residence had to break the lock to enter the upper level of 19½ Park Street on the day of the search. (Docket No. 23 at page 33-34). Indeed, the record reflects that the door had no handle and if not locked by the deadbolt would swing open. (Docket No. 27 at page 33). The fact that the door was not locked is consistent with the unrefuted testimony that David Goss and several other persons were in the process of removing the furniture and appliances from the residence at the time the agents arrived. In any event, based upon the record, it is clear that whether or not the door to the upstairs bedroom was locked, the entire residence was rented as a

single residence.

It is undisputed that Amanda Goss lived at the residence. She possessed apparent authority to consent to a search of the premises and provided the officers with consent to search the entire house. The defendant does not argue that the consent was coerced or involuntarily given, but that Amanda Goss lacked even apparent authority to consent to the search of the upstairs bedroom. The credible evidence in the record reflects that neither Bongiovannia, Wisniewski or Wilson were aware that David Goss lived at 19½ Park Street at the time consent to search the premises was given by Amanda Goss. Bongiovanni testified that Amanda Goss informed her that she lived at that address with Lighten and her child. When he asked if anyone would be home, Goss advised him "no, because her child was with family." (Docket No. 25 at page 17, 40). Wisniewski testified that after the search, David Goss advised Wisniewski that he used to live at 19½ Park Street, but had moved out. (Docket No. 19 at page 25). The credible evidence also reflects that the door to the upstairs apartment was not locked at the time the law enforcement officers entered the premises to conduct the search. As noted above, the record reflects that the door lacked a handle and would remain open unless the deadbolt was locked. The record further reflects that no damage was done to the door, door jams or the lock which would have likely occurred had the door been forced open. Based upon this record, Amanda Goss possessed apparent authority to consent to the search of the entire premises at 19½ Park Street. Further, the officer's objectively reasonable belief that Amanda Goss possessed apparent authority to consent to the search of the entire house, including the upstairs bedroom, renders the search constitutional even if she, in fact, did not have such authority. Moore v. Andreno, 505 F.3d. 203, 209-210 (2d. Cir. 2007)(Even if a third party lacks actual authority to consent to a

search of a particular area, she still may have apparent authority to consent to the search; and a police officer's objectively reasonable belief that he has obtained consent, even if in fact he has not, renders a search constitutional, so long as the mistake is one of fact and not of law). See also United States v. Buckner, 473 F.3d 551, 555 (4th Cir.2007).

The defendant also asserts that even if valid consent for the search was given, that the officers exceeded the scope of the authority because of the destructive nature of the search. The record reflects testimony from the owner of 19½ Park Street that damage was done to the apartment during the search. (Docket No. 23 at pages 12-13). However, the defendant does not argue, and the record does not reflect, that the specific evidence obtained against David Goss was the result of any destructive search by the law enforcement agents involved.[5] To the contrary, the defendant was observed carrying the weapons upon which the instant charges are based *outside* in the driveway of the residence. Further, the unrefuted testimony of Wisniewski and Wilson reflects that the evidence of the defendant's marijuana use was located in plan view, and was not the result of a destructive search.

**Conclusion**

Based on the above, it is recommended that the motion for the suppression of evidence and statements obtained as a result of the search of 19½ Park Street be denied.

Pursuant to 28 U.S.C. §636(b)(1), it is hereby ordered that this Report & Recommendation be filed with the Clerk of the Court and that the Clerk shall send a copy of the

---

[5] The record is insufficient to determine the extent, if any, destruction used by the law enforcement personnel in conducting the search. In any event, the defendant does not argue that any evidence was obtained as a result of a destructive search in this case.

7

Report & Recommendation to all parties.

**ANY OBJECTIONS to this Report & Recommendation must be filed with the Clerk of this Court within ten(10) days after receipt of a copy of this Report & Recommendation in accordance with 28 U.S.C. §636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, as well as W.D.N.Y. Local Rule 72(a)(3).**

**FAILURE TO FILE OBJECTIONS TO THIS REPORT & RECOMMENDATION WITHIN THE SPECIFIED TIME, OR TO REQUEST AN EXTENSION OF TIME TO FILE OBJECTIONS, WAIVES THE RIGHT TO APPEAL ANY SUBSEQUENT ORDER BY THE DISTRICT COURT ADOPTING THE RECOMMENDATIONS CONTAINED HEREIN.** Thomas v. Arn, 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed2d 435 (1985); F.D.I.C. v. Hillcrest Associates, 66 F.3d 566 (2d. Cir. 1995); Wesolak v. Canadair Ltd., 838 F.2d 55 (2d Cir. 1988); see also 28 U.S.C. §636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, and W.D.N.Y. Local Rule 72(a)(3).

Please also note that the District Court, on *de novo* review, will ordinarily refuse to consider arguments, case law and/or evidentiary material which could have been, but was not, presented to the Magistrate Judge in the first instance. See Patterson-Leitch Co. Inc. v. Massachusetts Municipal Wholesale Electric Co., 840 F.2d 985 (1st Cir. 1988).

Finally, the parties are reminded that, pursuant to W.D.N.Y. Local Rule 72.3(a)(3), "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority." **Failure to comply with the provisions of Rule 72.3(a)(3)may result in the District Court's refusal to consider the objection.**

So Ordered.

/s/ Hugh B. Scott
United States Magistrate Judge
Western District of New York

Buffalo, New York
April 15, 2009